IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-37-FL

| ARROW ENTERPRISE COMPUTING SOLUTIONS, INC., a Delaware corporation, | ) ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | ORDER |
| v. | ) ) | |
| BLUEALLY LLC, a Delaware limited liability company; BLUEALLY DIRECT, LLC, a Virginia limited liability company; NET DIRECT SYSTEMS, LLC, a North Carolina limited liability company; PHILIP ALBERT SANTONI, an individual; and CRISTA MARIE SANTONI, an individual, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on the motion to dismiss by defendants BlueAlly, LLC ("BlueAlly"), and BlueAlly Direct, LLC ("BlueAlly Direct") (collectively, the "BlueAlly defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. (DE 23). Plaintiff timely filed a response, to which the BlueAlly defendants replied. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the motion is denied.

**STATEMENT OF THE CASE**

Plaintiff filed this action on January 22, 2015, invoking federal diversity subject matter jurisdiction. On February 19, 2015, plaintiff filed an amended complaint, and with leave of court, plaintiff filed its second amended complaint on March 25, 2015.

Plaintiff asserts seven causes of action. Only the first, breach of contract, and third, anticipatory breach, are against the BlueAlly defendants, and therefore, properly before the court. Plaintiff contends the BlueAlly defendants actually breached, or in the alternative, anticipatorily breached, a contract with plaintiff, wherein the BlueAlly defendants allegedly agreed to cause defendant Net Direct Systems, LLC ("Net Direct"), once brought under the control of the BlueAlly brand, to utilize plaintiff as its exclusive supplier for certain products available in plaintiff's "Line Card." (2nd Am. Compl. ¶ 19). Plaintiff seeks general compensatory and consequential damages against the BlueAlly defendants in an amount subject to proof at trial.

The BlueAlly defendants filed the instant motion to dismiss on April 13, 2015. Plaintiff responded on May 14, 2015, and the BlueAlly defendants replied on June 1, 2015. The other defendants in this action, Net Direct, Philip Albert Santoni, and Crista Marie Santoni, have not answered plaintiff's complaint, and a motion for entry of default against them is pending before the clerk of court.

**STATEMENT OF THE FACTS**

The facts alleged in the complaint, as pertinent to the instant motion, may be summarized as follows. Plaintiff describes itself as a "global value-added distributor for the IT channel specializing in providing enterprise and midrange computing products, services, and solutions to value-added resellers, system integrators, and independent software vendors." (2nd Am. Compl. ¶ 12). Since approximately 2000, plaintiff has supplied computing products to defendant Net Direct,

and during the course of their business dealings, plaintiff has advanced funds and made loans to Net Direct. On October 13, 2010, in connection with these loans, defendant Net Direct executed a "Financing Statement" in favor of plaintiff, wherein Net Direct agreed to provide plaintiff with collateral to secure the debt. On or about July 1, 2013, the BlueAlly defendants[1] and defendant Net Direct entered into an "Asset Purchase Agreement" wherein Net Direct agreed to sell the BlueAlly defendants substantially all of Net Direct's assets. After the BlueAlly defendants and defendant Net Direct entered into the Asset Purchase Agreement, they contacted plaintiff, a secured creditor of Net Direct's assets, to determine under what circumstances plaintiff would consent to the asset purchase.

In response, on or about October 28, 2013, the three parties entered into a letter agreement, hereinafter "the letter agreement." Within the letter agreement, the parties recognized that defendant Net Direct owed plaintiff a total of $1,978,318. In consideration for defendant Net Direct utilizing plaintiff as its exclusive supplier for certain computer products available through plaintiff, and reaching certain annual purchase goals throughout a five year period, plaintiff agreed to forgive steadily increasing amounts of the debt, until it was fully forgiven at the end of the five years.

The BlueAlly defendants promised to cause defendant Net Direct to fulfil its purchase obligations as follows:

> "By signing below, Blue Ally [sic] agrees that, to the extent it either purchases the assets of NetDirect [sic] or has any control over the Net Direct operations, it will cause NetDirect [sic] to fulfill all purchase obligations required for forgiveness of the

---

[1] Plaintiff has pleaded facts demonstrating that the BlueAlly defendants are agents of one another, with such a unity of interest that any separateness between the two companies has ceased to exist. (2nd Am. Compl. ¶ 4). The sole member of both companies is Vijay Tanamala in his individual capacity, or Stimlab Ventures, LLC, whose sole member is Tanamala. Plaintiff alleges that both companies use the same email domain, have the same office location in Virginia, and otherwise conduct business for one another. The BlueAlly defendants have adopted the collective characterization within their own briefs, also referring to themselves as "the BlueAlly defendants." Accordingly, the court will refer only to the BlueAlly defendants collectively, without distinguishing which entity performed a specific action, since on the facts, the two entities act interchangeably.

> Promissory Note, however, [sic] cannot ensure that aggregate purchases will be sufficient to result in full forgiveness of the Promissory Note[.]"

(2nd Am. Compl. Ex.1 at 4-5). Plaintiff did not interfere with the asset purchase, and on or about December 10, 2013, the BlueAlly defendants and defendant Net Direct issued a press release announcing that the BlueAlly defendants had finalized acquisition of Net Direct and that the combined entity would operate under the BlueAlly brand.

Initially, the BlueAlly defendants caused defendant Net Direct to continue purchasing plaintiff's products as outlined within the letter agreement, and accordingly, plaintiff began forgiving Net Direct's debt. However, on or about August 1, 2014, the BlueAlly defendants notified plaintiff that they were transferring their business to plaintiff's direct competitor, necessarily ending plaintiff's relationship with defendant Net Direct as well. Plaintiff initiated this action on January 22, 2015, having received no further business or debt payments from defendant Net Direct.

## COURT'S DISCUSSION

A.    Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement [,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet

Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible that he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

B.  Analysis

The BlueAlly defendants raise two arguments in support of their motion to dismiss, both relating to whether plaintiff has pleaded facts sufficient to demonstrate an enforceable contract. First, the BlueAlly defendants argue that plaintiff has not shown consideration. Specifically, they allege plaintiff gave no consideration in return for the BlueAlly defendants' promise in the letter agreement. Secondly, the BlueAlly defendants assert that any promise made by them within the letter agreement is unenforceable as illusory.

  1.  Consideration

Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011). "[I]n order for a contract to be enforceable it must be supported by consideration. A mere promise, without more, is unenforceable." Inv. Prop. of Asheville, Inc. v. Norburn, 281 N.C. 191, 195 (1972). "A contract is an agreement between two or more persons or parties on sufficient consideration to do or refrain from doing a particular act." Kirby v. Stokes Cnty. Bd. of Educ., 230 N.C. 619, 626 (1949).

The BlueAlly defendants argue that the letter agreement is not enforceable, because it imposes no obligation on plaintiff with respect to the BlueAlly defendants. The BlueAlly defendants rely on the lack of mutual promises within the letter agreement. Plaintiff contends, however, that

5

the BlueAlly defendants' promise was given in exchange for plaintiff's forbearance from foreclosing on the assets of defendant Net Direct, or otherwise interfering with the BlueAlly defendants' purchase, the circumstances of which plaintiff pleads within its complaint.

The North Carolina Supreme Court has recognized that consideration may be given in ways other than mutual promises outlined specifically within the document. "Want of mutuality is merely one form of want of consideration." Wellington-Sears & Co. v. Dize Awning & Tent Co., 147 S.E. 13, 15 (N.C. 1929). See also Smith v. Barnes, 236 N.C. 176, 178 (1952) ("Where there is no consideration for a contract, except the mutual promises of the parties, such promises must be binding on both parties.") (emphasis added).

In Investment Properties of Asheville, Inc., the North Carolina Supreme Court explained consideration further:

> "It has been held that there is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not."

Inv. Prop. of Asheville, Inc., 281 N.C. at 196 (emphasis added). "Forbearance to exercise legal rights is sufficient consideration for a promise given to secure such forbearance even though the forbearance is for a third person rather than that of the promisor." Id. In Investment Properties of Asheville, Inc., plaintiffs stated that they would not continue grading and preparing land for a motel complex unless a satisfactory lease was obtained, as the former lease, given by defendant's sister to plaintiffs, contained deficiencies impeding financing. To prevent work from stopping, defendant generated the following written agreement:

> "This is to certify that I will stand personally liable as stated below for the Conduit grading and necessary expenses (at actual cost) for the land preparation of the Acton property now owned by [defendant's sister], in case the lease is not continued after

6

> June 1, 1966. I promise to pay in cash for this or else deed to you the 734 acre tract in Ashe County which is and will be free and clear."

Id. at 193-94. The written agreement made no reference to what plaintiffs were obligated to do in response to defendant's promise. The facts in Investment Properties of Asheville, Inc. demonstrated, however, that as a result of defendant's promise, plaintiffs continued improving the property. Defendant's sister never provided plaintiffs with a legally satisfactory lease agreement, and subsequently leased the property to another entity at the conclusion of plaintiffs' improvement work. The North Carolina Court of Appeals upheld a jury finding that defendant did not receive valuable consideration from plaintiffs for the execution and delivery of the written agreement, but the North Carolina Supreme Court remanded the case for a new trial, finding that the jury should have been instructed:

> "[T]hat if, by reason of the guaranty signed by defendant [], [defendant's sister] received benefits from the plaintiffs by their furnishing additional work on her property . . . or if [plaintiffs] did additional work upon the [] property and thereby incurred added expense by reason of this guaranty, either would be sufficient legal consideration to support such a guaranty."

Id. at 198.

Plaintiff at bar has set out the grounds for consideration in the complaint, and like the plaintiffs in Investment Properties of Asheville, Inc., plaintiff alleges this consideration was discussed prior to, and was the driving impetus behind, the letter agreement. Specifically, plaintiff suggests that it only gave its consent to the BlueAlly defendants' asset purchase agreement with defendant Net Direct, in exchange for the letter agreement. In particular:

> 14. On October 13, 2010, in connection with the loans [plaintiff] made to Net Direct, Net Direct executed a 'Financing Statement' in favor of [plaintiff] wherein Net Direct agreed to provide [plaintiff] with collateral to secure its debts with [plaintiff].

7

> 15. On or about July 1, 2013, BlueAlly Direct (acting as the agent and alter ego of BlueAlly) and Net Direct entered into an 'Asset Purchase Agreement' wherein Net Direct agreed to sell to BlueAlly substantially all of Net Direct's assets.
>
> 17. After BlueAlly Direct and Net Direct entered into the Asset Purchase Agreement, BlueAlly and Net Direct contacted [plaintiff] (a secured creditor of Net Direct's assets) to determine under what circumstances [plaintiff] would consent to the Asset Purchase Agreement.
>
> 18. On or about October 28, 2013, [plaintiff], BlueAlly, and Net Direct entered into a letter agreement (the 'Letter Agreement').

(2nd Am. Compl. ¶¶ 14-15,17-18). Contrary to the BlueAlly defendants' assertion, plaintiff pleads sufficient facts within its complaint permitting an inference that the letter agreement was generated in exchange for the consent of plaintiff; paragraph 18 follows logically from paragraph 17. "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Plaintiff was a secured creditor, the BlueAlly defendants sought to purchase substantially all of the assets of plaintiff's debtor, necessarily including collateral to which plaintiff possessed a right, and as a result, the BlueAlly defendants and debtor, defendant Net Direct, sought plaintiff's consent to the asset sale.

The BlueAlly defendants cite to Smith as evidence that their promise was nothing more than a "bare promise, made without consideration." (Def. Mem. in Support of Mot. at 12, DE 24). In Smith, however, the court looked for mutuality of promises within the document, because other consideration failed. Because the plaintiff in Smith had no exclusive right to sell the property, the court found plaintiff did not surrender a legal right sufficient to constitute consideration. See Smith, 236 N.C. at 178. The court did not hold that only mutual promises within the written terms of an agreement are legal consideration. See id. (finding that because plaintiff could not demonstrate

8

relinquishment of a legal right, "[c]onsequently, his right to recover must stand or fall upon the terms of his agreement with the defendants"). Taking the facts pleaded by plaintiff at bar as true, plaintiff's status as a secured creditor with an interest in defendant Net Direct's assets makes this matter easily distinguishable from Smith, as plaintiff did relinquish a legal right. Plaintiff did not interfere with the purchase agreement between the BlueAlly defendants and defendant Net Direct after the BlueAlly defendants signed the letter agreement, despite plaintiff's purported legal right to foreclose upon or interfere with the sale of defendant Net Direct's assets at that time. (See 2nd Am. Compl. ¶¶ 28, 39, 46).

The BlueAlly defendants' reliance on Charlotte Motor Speedway, LLC v. Cnty. of Cabarrus, 748 S.E.2d 171 (N.C. Ct. App. 2013) also is misplaced, as the present matter is distinguishable from that case. In Charlotte Motor Speedway, the letter at issue did not represent a meeting of the minds regarding all essential terms, as evidenced by the provisions left uncertain and the parties' subsequent inability to agree on terms for a formalized agreement. See id. at 174 ("We understand that all parties anticipate that the $80,000,000 will be formalized in an agreement that will also provide an outline of a schedule to prioritize projects and to identify the investment that [plaintiff] SMI plans to make through the construction of the drag strip and improvements.") (emphasis added). The court concluded "the writing shows its incompleteness by emphasizing its preliminary character," and therefore, was void for indefiniteness. Id. at 176. "A contract to enter into a future contract," which does not specify all material and essential terms, is not a valid, enforceable contract. Id. It was "wholly unclear" to the court what plaintiffs were bound to do, because the preliminary letter at issue explicitly left the consideration to be given by plaintiffs, "the investment . . . through construction," still to be identified. Id. at 177. The letter agreement at issue in the

9

matter at bar does not leave terms still to be determined like the "contract to enter a future contract" in Charlotte Motor Speedway. Id. at 176. The BlueAlly defendants obligated themselves to cause defendant Net Direct to utilize plaintiff as its exclusive supplier,[2] and plaintiff's performance is not referenced within the document as still to be identified, like the performance of plaintiffs in Charlotte Motor Speedway. Id. at 174.

Plaintiff has pleaded within its complaint facts sufficient to state plausibly that consideration for the letter agreement existed, and accordingly, the BlueAlly defendants' first argument for dismissal is without merit.

2. Illusory Promise

The BlueAlly defendants further argue that their promise within the letter agreement is unenforceable as illusory. "An apparent promise, which, according to its terms, makes performance optional with the promisor no matter what may happen, or no matter what course of conduct in other respects he may pursue, is in fact no promise." Bowman v. Hill, 262 S.E.2d. 376, 377 (N.C. Ct. App 1980). "To render a promise illusory, the promisor must reserve 'an unlimited right to determine the nature or extent of his performance.'" State v. Phillip Morris USA Inc., 363 N.C. 623, 641-42 (2009) (citing Wellington-Sears & Co., 147 S.E. at 15).

The text relating to the BlueAlly defendants' promise states:

"By signing below, Blue Ally [sic] agrees that, to the extent it either purchases the assets of NetDirect [sic] or has any control over the Net Direct operations, it will cause NetDirect [sic] to fulfill all purchase obligations required for forgiveness of the Promissory Note, however, [sic] cannot ensure that aggregate purchases will be sufficient to result in full forgiveness of the Promissory Note[.]"

---

[2] The promise made by the BlueAlly defendants is explained further herein.

10

(2nd Am. Compl. Ex.1 at 4-5). "If a contract is susceptible of two constructions, one of which will make it enforceable and the other unenforceable, the former construction will generally be preferred." Wellington-Sears & Co., 147 S.E. at 15. The only contingency upon which the BlueAlly defendants' performance depended was whether they purchased or came into control of defendant Net Direct. The BlueAlly defendants' promise to cause their newly purchased company to fulfill its purchase obligations was not subject to the BlueAlly defendants' discretion, despite their argument otherwise.

The BlueAlly defendants cite numerous North Carolina Court of Appeals cases to support their position that the promise is illusory. The cases cited by the BlueAlly defendants, including Bowman, invoke the same principle: a promise under which the promisor has the discretion to take said promise back, is no promise at all. The BlueAlly defendants characterize their promise as analogous to those at issue in the cases they cite, because their promise was "given and taken in the same breath," (See Def. Mem. in Support of Mot. at 14) (citing Kadis v. Britt, 22 N.C. 154, 163 (1944)). The BlueAlly defendants claim they immediately negated any promise made in the first portion of the paragraph by the language in the second half of the paragraph regarding their inability to ensure sufficient "aggregate purchases."

The contract at issue in Bowman was considered illusory, because defendants' performance never materialized, and therefore plaintiff's corresponding promise was never triggered. The "mutual considerations expressed hereinabove" mentioned within the Bowman contract, were defendants' "desire" to a construct a building "at some future time," and the opinion of all parties that they were "desirous of having one large inter-connecting parking lot" should the building come about. Id. Instead, defendant sold the property, and the plaintiff in Bowman initiated suit. The

11

other cases cited by the BlueAlly defendants are similar in nature, leaving much of one party's performance to the discretion of that party. The circumstances surrounding the BlueAlly defendants' promise to plaintiff would be more analogous to the circumstances of <u>Bowman</u> if the purchase had never gone through, and plaintiff was attempting to compel the BlueAlly defendants to pressure defendant Net Direct regardless. That is not the case before the court, however, as plaintiff has pleaded facts sufficient to demonstrate that the BlueAlly defendants' purchase of defendant Net Direct was finalized.

Further, the BlueAlly defendants mis-characterize the plain language of the letter agreement, because the BlueAlly defendants' promise to cause defendant Net Direct to purchase all of its requirements from plaintiff is distinct from the provision regarding aggregate purchases. The aggregate purchase provision, the provision the BlueAlly defendants could not ensure, pertains only to whether the requirements would be sufficient to reach the annually increasing quota of purchases required for full forgiveness, as described on the third through fourth pages of the letter agreement. (<u>See</u> 2nd Am. Compl. Ex.1 at 3-4).

In particular, the phrase "aggregate purchases" refers to page three of the letter agreement where the parties state the two requirements necessary for full loan forgiveness:

> "The business goals required for loan forgiveness are simple. If Net Direct purchases its product requirements using [plaintiff] as its exclusive Partner Demand Manager during the five year term of the loan <u>and</u> if the aggregate amount of invoices paid within terms by Net Direct on or before the anniversary of [year one through five of the Letter Agreement] equals or exceeds [increasing amount]. . ."

(<u>Id.</u> at 3) (emphasis added). The parties then list an aggregate purchase goal for each year, annually increasing in the amount of purchases required for years one through five, that defendant Net Direct had to reach in order to achieve full forgiveness. (<u>Id.</u>). At the conclusion of each year, plaintiff

12

agreed to forgive the loan amount at the rate of 1.5% of the invoiced amount for that particular year, and so on, with each year denoted separately. (Id.). To achieve full forgiveness, the steadily increasing purchase quota would have to be fulfilled every year.

> "To the extent, Net Direct has not purchased $141,000,000 in product by the fifth anniversary of this Letter Agreement, Net Direct agrees to pay the unpaid pro-rata portion of the intended forgiven loan amount to [plaintiff]. For example, if after the fifth anniversary of this Letter Agreement, Net Direct only purchased $100,000,000.00 in product, Net Direct will have to pay [plaintiff] $621,000.00."

(Id. ¶ e).

In that vein, the letter agreement bound the BlueAlly defendants to utilize plaintiff for defendant Net Direct's requirements, even if those requirements fell short of the goal necessary for full forgiveness. The BlueAlly defendants agreed to enforce the first provision, ("If Net Direct purchases its product requirements using [plaintiff] as its exclusive Partner Demand Manager during the five year term of the loan"), but they declined to bind themselves to the aggregate amount required for full forgiveness as dictated by the second provision ("and if the aggregate amount of invoices paid within terms by Net Direct on or before the anniversary of [year one through five of the Letter Agreement] equals or exceeds [increasing amount]"). The claim, as pleaded by plaintiff, is that the BlueAlly defendants breached the agreement by refusing to cause defendant Net Direct to fulfill its obligation to purchase its products requirements at all less than a year into the agreement, opting instead to utilize plaintiff's competitor. Plaintiff does not base its claim on the purchases falling short of the goal for full forgiveness.

Accordingly, the BlueAlly defendants' argument that their promise is illusory is without merit, and their motion to dismiss must be denied.

13

Because the court has found plaintiff pleaded facts demonstrating an enforceable contract, the BlueAlly defendants' argument that plaintiff's anticipatory breach claim also fails for lack of a valid contract is moot.

## CONCLUSION

Based on the foregoing, the BlueAlly defendants' motion to dismiss is DENIED. (DE 23).

SO ORDERED, this the 22nd day of October, 2015.

*/s/ Louise W. Flanagan*
LOUISE W. FLANAGAN
United States District Judge