IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-37-FL

**Arrow Enterprise Computing Solutions, Inc.,**

        Plaintiff,

v.

**BlueAlly, LLC, et al.,**

        Defendants.

**Order**

      The parties in this case entered into a bare-bones requirements contract and now disagree over their responsibilities under the agreement. There are no other documents showing their intentions as to any potential, implied terms. Can one party's contracts with third-party entities in similar situations potentially shed light on its intentions for this contract? Arrow argues that these documents are irrelevant in determining the parties' intentions in this contract because they show its intent only in those contracts and not in this one. The BlueAlly Defendants respond that the documents are relevant to show what implied terms Arrow typically uses in its requirements contracts. Based on the specific facts of this case, the court finds that Arrow must produce a limited subset of these documents because they are relevant, although only minimally, useful and proportional.

**I.    Background**

      Arrow Enterprise Computing Solutions, Inc. (Arrow) sells computer products and services to various types of companies, including value-added resellers such as Net Direct Systems (Net Direct). Order at 2–3, D.E. 34. For several years, Net Direct had contracted with Arrow to purchase computing products and receive advanced funds and loans. *Id.*

In 2013, BlueAlly, LLC and BlueAlly Direct, LLC (BlueAlly) acquired most of Net Direct's assets. BlueAlly negotiated with Arrow to determine the acquisition's effect on Net Direct's contract with Arrow. *Id.* at 3. The result was a "letter agreement" where BlueAlly made the following commitment:

> "Blue Ally [sic] agrees that, to the extent it either purchases the assets of NetDirect [sic] or has any control over the Net Direct operations, it will cause NetDirect [sic] to fulfill all purchase obligations required for forgiveness of the required Promissory Note, however, [sic] cannot ensure that aggregate purchases will be sufficient to result in full forgiveness of the Promissory Note[.]"

*Id.* at 3–4.

After signing this agreement, BlueAlly and Net Direct continued ordering their computing products from Arrow for about nine months until BlueAlly told Arrow it would start buying from Arrow's competitor. *Id.* at 4. Unsurprisingly, Arrow sued BlueAlly for breach of contract and anticipatory breach. Second Am. Compl. at 8–11, D.E. 20.

As part of discovery, BlueAlly seeks several documents: solution provider agreements; agreements with specific companies; and documents to other value-added resellers (VARs) including loans, debt reducing arrangements, credit policies and procedures, prebates, credit terms and conditions, Arrow's criteria for providing credit, and escrow programs. Reqs. for Produc. 19–20, 23–27, & 29–32, Ex. A, D.E. 71–1.

Arrow objects. It argues that the requested documents are neither relevant to BlueAlly's defenses nor "proportional to the needs of the case." Pl.'s Mem. Mot. to Compel at 3, D.E. 73. BlueAlly disagrees, so naturally it asks the court to compel production. Def.'s Br. Supp. Mot. to Compel at 3–8, D.E 72; Def.'s Mot. Compel Produc., D.E. 71.

II.     Discussion

Under the Federal Rules of Civil Procedure, a party can discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the

case . . . ." Fed. R. Civ. P. 26(b)(1). It can do so by asking its opponent to provide them with specific documents. Fed. R. Civ. P. 34(a)(1)(A). The responding party may object to the request by specifying "the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "[T]he party resisting discovery bears the burden of showing why [the discovery requests] should not be granted." *Martin* v. *Bimbo Foods Bakeries Distribution, LLC*, 313 F.R.D. 1, 5 (E.D.N.C. 2016) (alterations in original) (citations and quotation marks omitted).

        A.      Relevance

Requested documents must be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Courts have "broadly construed [the relevance standard] to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Martin*, 313 F.R.D. at 5.

BlueAlly claims that these documents are relevant to its defenses. It argues that the letter agreement both lacked essential terms and contained implied terms dealing with "credit, prebate, escrow, and other purchase terms." Def.'s Br. at 4-6, D.E. 72; Tr. Mot. to Compel Proceedings at 7, 14–15, D.E. 80. It needs Arrow's contracts with other parties to show a few things: Arrow's practice of agreeing on these essential and implied terms, Arrow's obligations under the letter agreement according to those terms, and the external and objective standards of industry dealings. Def.'s Br. at 5, 7.

Arrow claims that the requested documents are irrelevant for determining the parties' intent to contract, because the court can find their intent in the written document. Pl.'s Mem. at 5, D.E. 73; Tr. at 13. And since the letter agreement contains all necessary terms for a requirements contract, these documents will not show whether there were additional terms. Pl.'s Mem. at 5; Tr. at 13. It also points out that most of these documents are not requirement contracts, so they are irrelevant in determining how to interpret one. Pl.'s Mem. at 6; Tr. at 13. Finally, it notes that

the UCC's interpretation hierarchy considers two parties' "course of dealing" as more authoritative than the "usage of trade" in the industry. Pl.'s Mem. at 7. It contends that BlueAlly adopted Net Direct's "course of dealing" with Arrow by contracting with Net Direct to continue the same purchase obligations it had previously made with Arrow; and as a result, the court must look primarily to Arrow's dealings with Net Direct to determine the contract's interpretation. *Id.*[1]

The court will address these arguments by answering two questions. First, are these documents relevant to show the parties' intent to contract? Second, are they relevant to showing any implied terms that either Arrow or BlueAlly may have breached?

### 1. Intent to Contract a Requirements Contract

A requirements contract is a "lawful agreement . . . for exclusive dealing in the kind of goods concerned"; it "imposes . . . an obligation . . . to supply the goods . . . [or] promote their sale." N.C. Gen. Stat. Ann. § 25-2-306; *IWTMM, Inc.* v. *Forest Hills Rest Home*, 156 N.C. App. 556, 560–61, 577 S.E.2d 175, 178 (2003). To determine the intent of a party to contract, a court looks at the words of the contract. *Walton* v. *City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). If the words are ambiguous, a court can examine outside evidence to determine a party's intent to contract. *See First-Citizens Bank & Tr. Co.* v. *4325 Park Rd. Assocs., Ltd.*, 133 N.C. App. 153, 156, 515 S.E.2d 51, 54 (1999). If the words are unambiguous, a court applies their meaning and treats all outside evidence as irrelevant. *See id.* And irrelevant evidence is outside the scope of discovery. Fed. R. Civ. P. 26(b)(1).

---

[1] Arrow also argues that the district court already decided these issues in its ruling on BlueAlly's motion to dismiss. Pl.'s Mem. at 4–5; Tr. at 9–10. The court's order held that the "letter agreement . . . does not leave terms still to be determined," and it qualifies as a requirements contract. Order at 9–10, D.E. 34. Arrow's argument calls for applying the "law of the case" doctrine, but that doctrine does not apply to interlocutory orders such as a motion to dismiss. *See Plotkin v. Lehman*, 178 F.3d 1285, 1999 WL 259669 *1 (4th Cir. 1999). Because the court's order was on a motion to dismiss, the court is free to reconsider any of those decisions. *See id.* As a result, a court will typically allow a party to seek documents relevant to those potential reconsiderations. *See, e.g.*, *United States v. Capital Tax Corp.*, No. 04 CV 4138, 2011 WL 589615, at *4 (N.D. Ill. Feb. 10, 2011), *objections overruled,* No. 04 C 4138, 2011 WL 1399258 (N.D. Ill. Apr. 12, 2011).

Here, the district court held that the letter agreement is unambiguous. Order, at 9–10. Thus, the documents that BlueAlly seeks are irrelevant in determining the parties' intent to contract. *See, e.g.*, *Securiforce Int'l Am., LLC* v. *United States*, 127 Fed. Cl. 386, 398–400 (2016) (rejecting plaintiff's discovery request for defendant's requirement contracts with third-parties in similar circumstances because their contract was unambiguous).

### 2. Implied Terms

BlueAlly also seeks these documents to show that the letter agreement was missing basic terms of the trade and that Arrow violated the implied terms of the contract. Def.'s Br. at 4-7; Tr. at 7, 14–15. Arrow claims that it fully performed its obligations under the contract. Second Am. Compl. at ¶ 46, D.E. 20.[2] But BlueAlly has a right to determine what those obligations were to potentially undermine Arrow's claim.

"A 'usage of trade' is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." N.C. Gen. Stat. Ann. § 25-1-303(c). In North Carolina, "usage of trade . . . is relevant in ascertaining the meaning of the parties' agreement . . . ." *Id.* § 25-1-303(d). This practice extends to implied terms: the law does not assume that "because a writing . . . is final on some matters, it is to be taken as including all the matters agreed upon . . . ." *Id.* § 25-2-202 U.C.C. cmt. Additionally, usage of trade is relevant because it is included on the list of tools a court can use when construing a contract. *Id.* § 25-1-303(e).

---

[2] Arrow also argues that BlueAlly is barred from using "implied terms' as a defense, because it is an affirmative defense that must be raised in the Answer. Pl.'s Mem. at 6–7. "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(c)(1). Implied terms is not explicitly on the list that follows this rule, though the use of "including" suggests that the list is illustrative not definitive. *See id.* Regardless, if a plaintiff argues that a defendant breached a contract, then a defendant (and the court) may naturally ask what the parties' obligations were and which terms were violated. Thus implied terms are a general defense that BlueAlly did not need to affirmatively raise.

Here, BlueAlly seeks contracts that Arrow made with similar parties in similar situations. Def.'s Br. at 6; Tr. at 21–22. These documents will show what terms Arrow typically includes in a situation similar to the agreement made between Arrow and BlueAlly. Thus it could have relevance on how these two parties conducted their own transaction by showing background norms that the parties expected of one another. As a result, these documents would show the usage of trade; and, under the standard above, they are relevant to BlueAlly's argument that Arrow violated the implied terms of their contract.

Arrow argues that usage of trade documents are irrelevant because they come last on the hierarchy of interpretation. Pl.'s Mem. at 7 (citing N.C. Gen. Stat. Ann. § 25-1-303(e)(3)). But in discovery, parties are not entitled to only the best evidence; rather they are entitled to relevant evidence. While usage of trade certainly is not the most authoritative evidence of the complete scope of the parties' duties under the contract, it still can be relevant to the question before the court. Thus the court finds that the requested documents are relevant to BlueAlly's defenses.

### B. Proportionality

Relevance alone is insufficient to require production. BlueAlly must also show that its request is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).[3] The court must consider six factors to make this determination: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

---

[3] The parties agreed to be subject to the new rule even though Arrow filed its complaint before the 2015 Amendments took effect. Tr. at 4–6, D.E. 80. The new rules can apply since this motion was filed after the rules went into effect. *See* Fed. R. Civ. P. 86(a)(2). And the court finds no reason that applying them "would be infeasible or work an injustice." *See id.*

To determine the "importance of the issues," the court examines "'the significance of the substantive issues, as measured in philosophic, social, or institutional terms.'" *Id.* (quoting the 1983 Committee Note). These issues include "cases in public policy" or ones that "seek[] to vindicate vitally important personal or public values," such as "employment practices" and "free speech." *Id.* This case deals with a breach of contract claim. It does not appear that this issue will have an impact beyond the parties involved, and thus it does not deal with "vitally important personal or public values." Thus this factor weighs against allowing the proposed discovery.

For the "amount in controversy," the court compares the cost of discovery to the amount in controversy to determine its proportionality. *See, e.g.*, *Bell* v. *Reading Hosp.*, No. CV 13-5927, 2016 WL 162991, at *3 (E.D. Pa. Jan. 14, 2016). Here, Arrow seeks in its complaint at least $1.5 million plus interest. Second Am. Compl. at 8. If the court narrowed the request to limit the cost of discovery, then it will come nowhere near the amount in controversy. And even if the court grants the full scope of discovery, Arrow has provided no tangible evidence that the cost will be so expensive as to overtake the value of this litigation. So this factor weighs in favor of allowing the request.

With the "parties' relative access to relevant information," the rules are concerned about "[i]nformational asymmetry"—situations where one party has access to relevant information that the other party does not. *See* Fed. R. Civ. P. 26, Advisory Committee Notes, 2015 Amend. In those cases, "the burden of responding to discovery lies heavier on the party who has more information . . . ." *Id.*

BlueAlly argues that Arrow is the only party with access to its own agreements in a contractual relationship similar to BlueAlly and Arrow's. Tr. at 31. Arrow responds that the BlueAlly Defendants "have access to their own contracts with [sellers of computing products]

upon which they could rely." Pl.'s Mem. at 9, D.E. 73 (citing BlueAlly Direct 30(b)(6) Dep. Tr., at 144:10–16, D.E. 73–8). But BlueAlly is not seeking general contracts to show general trade usage, nor is it trying to establish its own trade usage; it is seeking Arrow's contracts to show Arrow's trade usage. In other words, it wants to discover Arrow's regular practice of making these contracts to understand how it views implied terms in a letter agreement. *See* N.C. Gen. Stat. Ann. § 25-1-303(c). Because only Arrow has access to these documents, this factor weighs strongly in favor of allowing discovery.

"Parties' resources" looks at a party's ability to fulfill the request, especially financially. *See* Fed. R. Civ. P. 26, Advisory Committee Notes, 2015 Amend. However, when asking this question, the court should also "'prevent [the] use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent.'" *Id.* (quoting the 1983 Committee Note). BlueAlly contends that Arrow has sufficient resources because it is a "$23 billion company," a fact that Arrow does not deny. *See* Tr. at 31.

Arrow replies that allowing this type of discovery would lead to "abusive discovery" where a party could "seek discovery of every other third-party contract that the other party has . . . ." Tr. at 28. However, this case is somewhat unique. Because the parties have no other contracts between them, they lack the documents that parties typical use to determine any implied terms. These documents can potentially shed light on implied terms by showing what Arrow typically expects from its requirement contracts with similar parties, making these documents relevant. In other cases, where there are more defined contracts or multiple documents between the parties, these types of documents at issue here may not be proportional to the needs of the case. Thus this holding does not allow a party to rummage through its opponents' contracts with third-parties in every case. Instead, it will allow a very limited

discovery applying only to documents that can shed light on the implied terms of a single contract. The court finds that this factor weighs slightly in favor of discovery.

With the "importance of the discovery in resolving the issues," the court looks at whether this discovery request goes to a central issue or a side one. *See, e.g.*, *Labrier* v. *State Farm Fire & Cas. Co.*, 314 F.R.D. 637, 641, 643 (W.D. Mo. 2016) ("The issues at stake are at the very heart of this litigation."). In addressing this factor, Arrow simply argues that the documents are irrelevant. As already discussed, the court disagrees: they are relevant, but only minimally so. BlueAlly argues that Arrow's interpretation of the letter agreement is not what the parties intended. Tr. at 30. So it wants to show Arrow's intent by figuring out "what Arrow does when it contracts" in similar situations. *Id.* Yet this factor does not look at the materials' relevance; it looks at its importance to resolving the issues in the case. Here, the requested documents will potentially show Arrow's trade usage. While certainly relevant to contractual interpretation, it is low on the list for interpreting a contract, so it will have a lesser impact on this issue than the other evidence. But because of its relevance, this factor weighs in favor of discovery, but only slightly.

Finally, does "the burden or expense of the proposed discovery outweigh[] its likely benefit"? Fed. R. Civ. P. 26. The party claiming a burden or expense must specifically demonstrate it, while the party seeking the request should show the benefit coming from the request. *See id.* at Advisory Committee Notes, 2015 Amend. This factor may combine all the previous factors into a final analysis of burdens versus benefits. *See id.*

Arrow argues that its burden is large. It claims that it has worked with over 6,000 reseller entities, and entered into an even large number of solution provider agreements from 2013–2014. Stasiak Decl. at ¶¶ 8, 11–13, D.E. 73–9. As a result, "it would likely take hundreds of man hours

to search for and collect the requested documents[,]" and "the cost . . . would be incredibly expensive." *Id.* at ¶ 14. However, it does not provide specific figures for these costs. A party must do more than just assert that the burden will be expensive; it should "provide sufficient detail in terms of time, money[,] and procedure required to produce the requested documents." *Ashmore* v. *Allied Energy, Inc.*, No. 8:14-CV-00227-JMC, 2016 WL 301169, at *3 (D.S.C. Jan. 25, 2016) (quoting *Corey* v. *Aztec Steel Bldg*, *Inc.*, 225 FRD 667, 672 (D. Kan. 2005) ("numerous man hours" is an insufficient amount of information)).

Arrow adds that the court should consider the injury resulting from violating non-disclosure agreements, like the ones in these requested documents. Pl.'s Mem. at 10 (citing *Pansy* v. *Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) (courts must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled)). But BlueAlly correctly notes that "the Consent Protective Order in this case expressly contemplated the discovery of 'confidential business and marketing strategy.'" Def.'s Br. at 10, D.E. 72 (quoting Consent Protective Order, D.E. 48). An agreement between two parties not to disclose a document does not prohibit the court from requiring production of an otherwise relevant document. Thus, Arrow has failed to show its burden on the expense of this request.

BlueAlly has shown a limited benefit for these documents as seen in its relevance arguments. And as discussed before, discovery allows relevant evidence, not just strongly convincing evidence since the parties cannot know at this stage what evidence will make a difference in the case's final outcome. So this factor weighs slightly in favor of allowing discovery.

It is true that the case is not an important public policy case and the information is not necessarily essential to BlueAlly's case, but it might be. Considering the large amount in controversy, a more limited cost of discovery to a party with sufficient resources, and the fact that only Arrow has access to these documents, this court finds that a more limited discovery request is proportional to the needs of this case. Thus the court orders Arrow to produce any solution provider agreements that (1) are requirement contracts, (2) that it made with a value-added reseller, (3) where there was also a letter agreement, (4) for the six months before the formation of Arrow's letter agreement with BlueAlly and Net Direct (i.e. October 2013).

### III. Conclusion

Arrow has failed to show why the requested documents are not relevant to BlueAlly's defenses or proportional to the needs of the case. Thus BlueAlly's Motion to Compel will be granted in part and denied in part. Arrow must produce documents that meet the following qualifications. For any transaction where Arrow entered into a requirements contract with a value-added reseller using both a letter agreement and a solution provider agreement, it must produce those solution provider agreements. Arrow need only produce agreements made during the period ranging from six months before the formation of the contract at issue in this case (i.e. October 2013). Each party shall bear its own costs.

Dated: March 3, 2017

_____
Robert T. Numbers, II
United States Magistrate Judge